NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1178
_____

UNITED STATES OF AMERICA

v.

RICARDO DONATE-CARDONA,
                                        Appellant


_____

On Appeal from the District Court of the Virgin Islands
Division of St. Thomas and St. John
(D.C. No. 3-15-cr-00041-003)
District Judge: Honorable Curtis V. Gomez
_____

Argued December 10, 2018
Before: CHAGARES, HARDIMAN, and RESTREPO, *Circuit Judges*.

(Filed: April 4, 2019)

Jeannine N. Rodriguez [**ARGUED**]
JNR Law Group
300 Sevilla Avenue
Suite 304
Coral Gables, FL 33134
        *Counsel for Appellant*

Joycelyn Hewlett
Acting United States Attorney
Sigrid M. Tejo-Sprotte [**ARGUED**]
David W. White
Assistant United States Attorney

Office of United States Attorney
5500 Veterans Drive, Suite 260
United States Courthouse
St. Thomas, VI 00802
     *Counsel for Appellee*

—————————

OPINION[*]

—————————

HARDIMAN, *Circuit Judge*.

A jury convicted Ricardo Donate-Cardona of federal drug trafficking and firearms possession offenses and the District Court sentenced him to 274 months in prison. Donate-Cardona appeals his judgment of conviction and sentence. We will affirm.

I[1]

Donate-Cardona first raises a claim under the Jencks Act, 18 U.S.C. § 3500, which requires the Government to disclose certain recorded statements of its witnesses. *United States v. Hill*, 976 F.2d 132, 139 (3d Cir. 1992). When the Government violates the Jencks Act, the remedy (if any) remains at the discretion of the trial court. *See United States v. Jackson*, 649 F.2d 967, 972 & n.6 (3d Cir. 1981). Our decision in *Jackson* weighs heavily against Donate-Cardona's Jencks Act argument.

Here, as in *Jackson*, a Jencks Act violation occurred. The Government concedes that it failed to timely disclose reports and notes made by agents of the Drug Enforcement

—————————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The District Court had jurisdiction under 18 U.S.C. § 3241. *United States v. Ayala*, 913 F.3d 752, 755 (3d Cir. Mar. 6, 2019). We have jurisdiction under 28 U.S.C. § 1291.

Administration and the Federal Bureau of Investigation. But the Government's delay was brief (one day at most), and both agents were available for cross-examination about the documents in question. Under these circumstances, the Government's violation was neither "willful" nor "in reckless disregard of its obligation" under the Jencks Act. *Jackson*, 649 F.2d at 972. Accordingly, we hold that the District Court did not abuse its discretion when it declined to strike the agents' testimony or declare a mistrial.

## II

Donate-Cardona also argues that the District Court violated the Confrontation Clause of the Sixth Amendment to the Constitution when it permitted agent Chad Foreman of the Bureau of Alcohol, Tobacco, Firearms, and Explosives to testify about a report prepared by his fellow ATF agent, Steve Waters. Donate-Cardona correctly notes that Waters did not testify, but he errs when he claims that Foreman's testimony was based only on Waters's report. In fact, Foreman testified to the interstate nexus of the firearms at issue based on his own "original research." Supp. App. 262; *see* Supp. App. 250. Agent Foreman physically examined the firearms both before and during his testimony, and all but one of the guns had markings showing where they were manufactured. Supp. App. 263, 309–10; *cf. Williams v. Illinois*, 567 U.S. 50, 62, 70–79 (2012) (plurality opinion) (finding no Confrontation Clause violation even though witness hadn't conducted or observed any testing herself). So the admission of Agent

Foreman's testimony—which was subject to cross-examination by defense counsel—did not violate the Confrontation Clause.[2]

### III

We turn next to Donate-Cardona's contention that the District Court erred when it refused to instruct the jury on multiple conspiracies. In his view, there were separate and distinct conspiracies in St. Thomas and Puerto Rico. The Government counters that the conduct on both islands was part of the same conspiracy. The three-factor test we have applied to make this determination supports the Government's position. *See United States v. Kelly*, 892 F.2d 255, 259 (3d Cir. 1989); *see also United States v. Greenidge*, 495 F.3d 85, 93–95 (3d Cir. 2007) (applying *Kelly*).

First, the evidence shows there was a "common goal among the conspirators," *Kelly*, 892 F.2d at 259—namely, to distribute cocaine in both Puerto Rico and St. Thomas. The record shows that the conspirators agreed to ship 150 kilograms of cocaine and several firearms. The guns and 100 kilograms of drugs were meant for St. Thomas, while 50 kilograms were bound for Puerto Rico. Although the destinations included two islands, the conspiracy involved one transaction.

Second, the conspiracy contemplated a "continuous result that [would] not continue without the continuous cooperation of the conspirators." *Id.* (quoting *United*

---

[2] Even had Agent Foreman's testimony been inadmissible, the error would have been harmless. Agent Mark Joseph of the Drug Enforcement Administration established the interstate nexus based on his experience and physical examination of the firearms at issue. And Joseph's testimony satisfied the five factors stated in *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

4

*States v. DeVarona*, 872 F.2d 114, 119 (5th Cir. 1989)). An unbroken chain of events confirms the conspiracy's continuous character. At a meeting in Puerto Rico, the conspirators agreed on two payments for the cocaine shipment: about $1.5 million to be paid in Puerto Rico, and $480,000 and three firearms to be paid in St. Thomas. *See* Supp. App. 184–88, 213, 221, 241–42. After the initial payment was made in Puerto Rico, the Government's confidential source (CS) met the conspirators in St. Thomas to exchange the second payment ($480,000 and guns) for what the conspirators thought would be the cocaine.

Third, the dealings of the conspirators overlapped significantly. *See Kelly*, 892 F.2d at 260. Donate-Cardona and others met the CS in Puerto Rico to negotiate the drug transaction. They boarded a boat together, and the CS recorded the conspirators and a secret compartment on the boat. Later that day, Donate-Cardona and two conspirators arrived in St. Thomas on the boat they had shown the CS in Puerto Rico. The conspirators then gave the CS the firearms and the second cash payment.

These factors support the Government's claim of a single conspiracy, so the District Court did not err when it declined to give a multiple-conspiracies jury instruction.

## IV

Finally, Donate-Cardona claims entitlement to a new sentence because the District Court should have found him responsible for 133 kilograms of cocaine instead of 150 kilograms. He relies on the fact that the money seized ($1,733,036) would have paid for only 133 kilograms of cocaine (at the agreed-on price of $13,000 per kilogram).

5

Although Donate-Cardona's mathematical calculation is accurate, the CS testified that the conspirators agreed to purchase 150 kilograms of cocaine. The CS also testified that he had expected to receive $480,000 in St. Thomas, which would have led to a cash total of $1,963,036—enough to purchase 151 kilograms of cocaine. Consequently, the District Court weighed the CS's testimony against the $230,000 discrepancy between the cash actually seized and the amount needed to purchase 150 kilograms of cocaine. And it credited that testimony.

In view of the conflicting evidence, we cannot say the District Court clearly erred when it found by a preponderance of the evidence that the conspirators agreed to a 150 kilogram deal. *See United States v. Sau Hung Yeung*, 241 F.3d 321, 322 (3d Cir. 2001). The moment Donate-Cardona agreed to distribute cocaine, he joined a conspiracy in violation of 21 U.S.C. § 846. *See United States v. Gibbs*, 190 F.3d 188, 197 & n.2 (3d Cir. 1999). And the CS who participated in (and recorded) the agreement testified that the conspirators agreed to purchase 150 kilograms of cocaine. That suffices to support the District Court's decision as to drug weight, even if the cash seized was $230,000 short of what was needed to buy 150 kilograms. Thus, resentencing is unwarranted.[3]

---

[3] Donate-Cardona also argues that his judgment of conviction must be set aside because the District Court lacked jurisdiction and because District Judge Gomez presided in violation of the Appointments Clause of the United States Constitution. These arguments are foreclosed by our recent opinion in *Ayala*, 2019 WL 1051579.

\*     \*     \*

For the reasons stated, we will affirm Donate-Cardona's judgment of conviction and sentence.